# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

BETSABÉ MONTOYA and BLANCHE PESCE,
 individually and on behalf of all others similarly situated,

Plaintiffs,

v.

NEW YORK STATE UNITED TEACHERS; NEW YORK
STATE UNITED TEACHERS MEMBER BENEFITS TRUST,
a New York not-for-profit trust; ING LIFE INSURANCE AND
ANNUITY COMPANY, a Connecticut corporation, LEE
CUTLER, Trustee of New York State United Teachers Member
Benefits Trust; KATHLEEN M. DONAHUE, Trustee of New
York State United Teachers Member Benefits Trust; RICHARD
C. IANNUZZI, Trustee of New York State United Teachers
Member Benefits Trust; ROBERT W. LESNIEWSKI, Trustee of
New York State United Teachers Member Benefits Trust; ALAN
B. LUBIN, Trustee of New York State United Teachers Member
Benefits Trust; WILLIAM J. MCAULIFFE, Trustee of New
York State United Teachers Member Benefits Trust; JOSEPH P.
MCLAUGHLIN, Trustee of New York State United Teachers
Member Benefits Trust; ARTHUR PEPPER, Trustee of New
York State United Teachers Member Benefits Trust; ELLEN
SCHULER MAUK, Trustee of New York State United Teachers
Member Benefits Trust; BARBARA SHAPIRO, Trustee of New
York State United Teachers Member Benefits Trust;
RODERICK P. SHERMAN, Trustee of New York State United
Teachers Member Benefits Trust; GARY TERWILLIGER,
Trustee of New York State United Teachers Member Benefits
Trust; IVAN TIGER, Trustee of New York State United
Teachers Member Benefits Trust; JOHN DOE DEFENDANTS
1–99 and JANE DOE DEFENDANTS 1–99, Trustees of New
York State United Teachers Member Benefits Trust,

Defendants.

Index No.

Date Purchased

Plaintiffs designate
Nassau County as the
place of trial

The basis of venue is
Plaintiffs' residences

# SUMMONS

Plaintiff Montoya
resides at
25 Franklin Blvd.,
Apt. B-1
Long Beach, NY 11561

Plaintiff Pesce
resides at
127 Pine Street
Rockville Center, NY 11570

To the above named Defendants

**You are hereby summoned** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiffs' Attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:     New York, New York         KELLER ROHRBACK L.L.P.
         February 25, 2010

By:   /s/David S. Preminger
    David S. Preminger
    770 Broadway, Second Floor
    New York, NY 10003
    Tel:  (646) 495-6198
    Fax:  (646) 495-6197
    Email: dpreminger@kellerrohrback.com

    Lynn Lincoln Sarko
    Derek W. Loeser
    Tana Lin
    Amy Williams-Derry
    Karin B. Swope
    KELLER ROHRBACK L.L.P.
    1201 Third Avenue, Suite 3200
    Seattle, WA 98101
    Tel:  (206) 623-1900
    Fax:  (206) 623-3384
    Email: lsarko@kellerrohrback.com;
    dloeser@kellerrohrback.com;
    tlin@kellerrohrback.com;
    awilliams-derry@kellerrohrback.com;
    kswope@kellerrohrback.com

    Jeffrey C. Engerman
    Law Offices of Jeffrey C. Engerman, PC
    11901 Santa Monica Boulevard, Suite 700
    Los Angeles, CA  90025

2

Tel:  (310) 207-7777
Fax: (310) 207-7779
Email:  JEngerman@EngermanLaw.com

Allen C. Engerman
Law Offices of Allen C. Engerman, P.A.
Sanctuary Centre
4800 North Federal Highway, Suite 100-D
Boca Raton, FL  33431
Tel:  (561) 392-2222
Fax: (561) 392-2123
Email:  ACELaw@mcn.org

Edward Ted Siedle
79 Island Drive South
Ocean Ridge, Florida  33435
Tel:  (561) 202-0919
Fax:  (561) 202-0191
Email:  ESiedle@aol.com

Denis J. Jean
1018 Jerome Road
Franklin Square
New York, NY  22020
Tel:  (516) 837-3892
Fax:  (516) 943-2737
Email:  RLLDJJ@Hofstra.edu

*Attorneys for Plaintiffs*

3

Defendants' addresses:

NEW YORK STATE UNITED TEACHERS
NYSUT Headquarters
800 Troy-Schenectady Road
Latham, NY 12110-2455
Tel.: 518-213-6000

NEW YORK STATE UNITED TEACHERS MEMBER BENEFITS TRUST,
a New York not-for-profit trust;
NYSUT Member Benefits
800 Troy-Schenectady Road
Latham, NY 12110-2455
Tel.: 800-626-8101

ING LIFE INSURANCE AND ANNUITY COMPANY, a Connecticut corporation,
One Orange Way
Windsor, CT 06095-4774
Tel.: 800-262-3862

LEE CUTLER
KATHLEEN M. DONAHUE
RICHARD C. IANNUZZI
ROBERT W. LESNIEWSKI
ALAN B. LUBIN
WILLIAM J. MCAULIFFE
JOSEPH P. MCLAUGHLIN
ARTHUR PEPPER
ELLEN SCHULER MAUK
BARBARA SHAPIRO
RODERICK P. SHERMAN
GARY TERWILLIGER
IVAN TIGER, as Trustees of New York State United Teachers Member Benefits Trust;
NYSUT MEMBER BENEFITS
800 Troy-Schenectady Road
Latham, NY 12110-2455
Tel.: 800-626-8101

4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

------------------------------------------------------------

BETSABÉ MONTOYA and BLANCHE PESCE,
individually and on behalf of all others similarly situated,

                      Plaintiffs,

                          v.

NEW YORK STATE UNITED TEACHERS; NEW YORK
STATE UNITED TEACHERS MEMBER BENEFITS TRUST,
a New York not-for-profit trust; ING LIFE INSURANCE AND
ANNUITY COMPANY, a Connecticut corporation, LEE
CUTLER, Trustee of New York State United Teachers Member
Benefits Trust; KATHLEEN M. DONAHUE, Trustee of New
York State United Teachers Member Benefits Trust; RICHARD
C. IANNUZZI, Trustee of New York State United Teachers
Member Benefits Trust; ROBERT W. LESNIEWSKI, Trustee of
New York State United Teachers Member Benefits Trust; ALAN
B. LUBIN, Trustee of New York State United Teachers Member
Benefits Trust; WILLIAM J. MCAULIFFE, Trustee of New
York State United Teachers Member Benefits Trust; JOSEPH P.
MCLAUGHLIN, Trustee of New York State United Teachers
Member Benefits Trust; ARTHUR PEPPER, Trustee of New
York State United Teachers Member Benefits Trust; ELLEN
SCHULER MAUK, Trustee of New York State United Teachers
Member Benefits Trust; BARBARA SHAPIRO, Trustee of New
York State United Teachers Member Benefits Trust;
RODERICK P. SHERMAN, Trustee of New York State United
Teachers Member Benefits Trust; GARY TERWILLIGER,
Trustee of New York State United Teachers Member Benefits
Trust; IVAN TIGER, Trustee of New York State United
Teachers Member Benefits Trust; JOHN DOE DEFENDANTS
1–99 and JANE DOE DEFENDANTS 1–99, Trustees of New
York State United Teachers Member Benefits Trust,

                    Defendants.

------------------------------------------------------------

Index No.

**CLASS ACTION**
**COMPLAINT**

## I.   INTRODUCTION

    1.    This is a class action brought by Plaintiffs Betsabé Montoya and Blanche Pesce

(collectively, "Plaintiffs") on behalf of themselves and other participants and beneficiaries of the

1

Opportunity Plus and Opportunity Independence programs (collectively, the "Opportunity Programs") for breaches of fiduciary duty, aiding and abetting a fiduciary breach, and unjust enrichment. The Opportunity Programs are Internal Revenue Code § 403(b) tax deferred annuity programs created and established by Defendant New York State United Teachers Member Benefits Trust[1] ("NYSUT Trust"), an arm of Defendant New York State United Teachers ("NYSUT"), in conjunction with Defendant ING Life Insurance and Annuity Company and its predecessor-in-interest, Aetna Life Insurance and Annuity Company ("Aetna") (referred to collectively herein as "ING"). NYSUT Trust exclusively endorsed to NYSUT members the Opportunity Programs and offered through the Opportunity Programs annuities issued by ING. The Opportunity Programs operate as group annuity contracts.

2.      NYSUT, NYSUT Trust, and the NYSUT Trust Trustees (collectively, the "NYSUT Defendants"), had an obligation to oversee the Opportunity Programs in the best interests of the employees of New York's schools, colleges, and healthcare facilities who were NYSUT members and participants in the Opportunity Programs, but did not do so. In about June 1989, the NYSUT Defendants selected Aetna to offer a § 403(b) product to NYSUT members. In exchange for selecting and endorsing the Opportunity Programs, Aetna and ING have paid NYSUT Trust millions of dollars. Between 1989 and 2006, NYSUT enrolled over 50,000 NYSUT members, including Plaintiffs, in the Opportunity Programs. The ING annuities offered to NYSUT members are comprised of extremely high cost investments that carry greater risk than comparable lower cost investments but were selected because of the payments NYSUT Trust and ING would receive by offering them, and not as a result of a prudent evaluation by the

---

[1] "New York State United Teachers Member Benefits Trust" was previously named "New York State United Teachers Benefits Trust." The name changed in or after April 2005.

2

NYSUT Defendants of the merits of the programs. The excessive costs of the ING annuities in the Opportunity Programs resulted in hundreds of millions of dollars in lost retirement savings for Plaintiffs and the Class (defined below) and exposed Plaintiffs, the Class, and the Subclass (defined below) to risks for which they were not adequately compensated.

3.      Plaintiffs allege that the NYSUT Defendants breached the common law fiduciary duties they owed to Plaintiffs, the Class, and the Subclass in connection with selecting, offering, continuing to offer and endorsing the Opportunity Programs. In particular, Plaintiffs allege that the NYSUT Defendants accepted payments from ING for endorsing the Opportunity Programs, did not engage in a prudent selection process for § 403(b) investments for NYSUT members, and after selecting the Opportunity Programs, failed to investigate and monitor whether the Opportunity Programs and Fixed Account offered by ING were and remained in the best interests of Plaintiffs, the Class, and the Subclass. Plaintiffs further allege that ING aided and abetted the NYSUT Defendants' fiduciary breaches by paying endorsement fees to NYSUT Trust for endorsing the Opportunity Programs and by offering § 403(b) investments to NYSUT members that were not in their best interests, as set forth in more detail below. Plaintiffs also allege that ING was unjustly enriched by charging Plaintiffs, the Class, and the Subclass unnecessary and excessive fees, and by receiving additional fees, which it passed through to Plaintiffs and the Class, from Investment Entities.[2] Defendants' actions resulted in significant investment losses to Plaintiffs, the Class, and the Subclass.

---

[2] "Investment Entities" includes, collectively, mutual funds, mutual fund advisors, investment managers, and other investment advisors.

3

## II.   PARTIES

**A.   Plaintiffs.**

4.   **Plaintiff Betsabé Montoya.**  Betsabé Montoya is a resident of Long Beach, New York.  She is a teacher in the Long Beach School District (the "School District") and has taught middle school students in the School District for twenty years.  Plaintiff Montoya became a member of NYSUT in or about 1990.  She was employed by the School District during the Class Period (defined below) and Subclass Period (defined below).  Plaintiff Montoya signed a contract with Aetna when she began participating in the Opportunity Programs program in 1996, has deposited over $100,000 into the Programs since that time, and has invested in the ING Fixed Account.

5.   **Plaintiff Blanche Pesce.**  Blanche Pesce is a resident of Rockville Center, New York.  She is a retired teacher who taught French and Spanish in the School District from 1992 until 2006.  Plaintiff Pesce has been a member of NYSUT since 1993.  She was employed by the School District during the Class Period and Subclass Period.  Plaintiff Pesce signed a contract with Aetna when she began participating in the Opportunity Programs in 1994, has deposited over $100,000 into the Programs since that time, and has invested in the ING Fixed Account.

**B.   Defendants.**

6.   **Defendant New York State United Teachers.**  NYSUT is an employee organization comprised of more than 600,000 people who work in, or are retired from, New York's schools, colleges, universities, and healthcare facilities.  NYSUT is a federation of more than 1,200 local unions.  By offering retirement benefits to its employee members in conjunction

4

with its co-defendants, NYSUT acts as a fiduciary and owes common law fiduciary duties to Plaintiffs, the Class, and the Subclass.

7. **Defendant New York State United Teachers Member Benefits Trust.** NYSUT Trust is a trust established in 1983 by NYSUT to operate for the benefit of NYSUT members. NYSUT Trust was established to provide certain benefits directly to NYSUT members and to negotiate with vendors on behalf of NYSUT members. NYSUT Trust is an arm of NYSUT, and functions on behalf of NYSUT, and as its agent thereof, with respect to its involvement in the Opportunity Programs. By offering retirement benefits to NYSUT members in conjunction with its co-defendants, NYSUT Trust acts as a fiduciary and owes common law fiduciary duties to Plaintiffs, the Class, and the Subclass.

8. **Defendants NYSUT Trust Trustees.** NYSUT Trust is governed by its Board of Trustees (the "NYSUT Trust Trustees"). The NYSUT Trust Trustees are appointed by NYSUT's Board of Directors. The NYSUT Trust Trustees have an obligation to review the NYSUT Trust's operations and owe common law fiduciary duties to Plaintiffs, the Class, and the Subclass in their oversight of NYSUT Trust. The individual NYSUT Trust Trustees during the Class Period and Subclass Period include:

      (a)    Defendant **Lee Cutler;**

      (b)    Defendant **Kathleen M. Donahue;**

      (c)    Defendant **Richard C. Iannuzzi;**

      (d)    Defendant **Robert W. Lesniewski;**

      (e)    Defendant **Alan B. Lubin;**

      (f)    Defendant **William J. McAuliffe;**

(g)     Defendant **Joseph P. McLaughlin**;

(h)     Defendant **Arthur Pepper**;

(i)     Defendant **Barbara Shapiro**;

(j)     Defendant **Ellen Schuler Mauk**;

(k)     Defendant **Roderick P. Sherman**;

(l)     Defendant **Gary Terwilliger**;

(m)     Defendant **Ivan Tiger**; and

(n)     **John Doe Defendants 1–99 and Jane Doe Defendants 1–99**, the

identities of whom are unknown to Plaintiffs at this time.

9.      **NYSUT Defendants.** NYSUT, NYSUT Trust, and the NYSUT Trust Trustees

are referred to collectively herein as the "NYSUT Defendants."

10.     **Defendant ING Life Insurance and Annuity Company.** ING is a corporation

organized and existing under the laws of the State of Connecticut. On December 13, 2000, ING

became the successor-in-interest and successor-in-liability to Aetna. ING, through its offering of

the Opportunity Programs to NYSUT members, transacts business in New York, and regularly

does or solicits business or derives substantial revenue from services rendered within this state.

Through its long-standing, extensive relationship with the NYSUT Defendants in developing and

servicing the Opportunity Programs which the NYSUT Defendants offer to their members, ING

knows or reasonably should have known that the NYSUT Defendants are fiduciaries to

Plaintiffs, the Class, and the Subclass as alleged herein.

11.     **Defendants.** The NYSUT Defendants and ING are referred to collectively herein

as "Defendants."

6

## III. DEFENDANTS' FIDUCIARY STATUS

### A. NYSUT and NYSUT Trust

12.     NYSUT acts and has acted as a fiduciary to Plaintiffs, the Class, and the Subclass, because it developed and, through at least December 31, 2006, provided a retirement investment product that was tailored specifically for NYSUT members. NYSUT holds greater expertise and knowledge regarding the tailored ING annuities and other § 403(b) investments at issue than do Plaintiffs, the Class, and the Subclass. NYSUT also exercises control and responsibility over the investment products it makes available to NYSUT members. As a fiduciary, NYSUT owes common law fiduciary duties to Plaintiffs, the Class, and the Subclass, including but not limited to the requirement to act solely in the interest of its beneficiaries.

13.     NYSUT Trust acts and has acted as a fiduciary to Plaintiffs, the Class, and the Subclass because it designed, developed and, through at least December 31, 2006, provided a retirement investment product that was tailored specifically for NYSUT members. NYSUT Trust holds greater expertise and knowledge regarding the tailored ING annuities and other § 403(b) investments at issue than do Plaintiffs, the Class, and the Subclass. NYSUT Trust also exercises discretion, control and responsibility over the investment products it helps develop for NYSUT members. As a fiduciary, NYSUT Trust owes common law fiduciary duties to Plaintiffs, the Class, and the Subclass, including but not limited to the requirement to act solely in the interest of its beneficiaries.

14.     As fiduciaries, NYSUT and NYSUT Trust are in a special relationship of trust and confidence vis-à-vis the Plaintiffs, the Class, and the Subclass. NYSUT and NYSUT Trust

7

have a duty to act for the benefit of Plaintiffs, the Class, and the Subclass, to put the interests of Plaintiffs, the Class, and the Subclass above their own, and owe fiduciary duties to them.

**B.     NYSUT Trust Trustees**

15.     The NYSUT Trust Trustees are responsible for oversight, governance and management of NYSUT Trust. The NYSUT Trust Trustees exercise discretion and control over NYSUT Trust and its fiduciary relationships and fiduciary roles. As fiduciaries, the NYSUT Trust Trustees owe common law fiduciary duties to Plaintiffs, the Class, and the Subclass, including but not limited to the requirement to act solely in the interest of the beneficiaries.

## IV.   THE NYSUT DEFENDANTS' FIDUCIARY BREACHES

**A.     The NYSUT Defendants Selected ING Based on the Payments ING Would Give to NYSUT Trust.**

16.     In 1988, the NYSUT Defendants selected Aetna to provide a § 403(b) annuity product to be offered to its membership. NYSUT Defendants worked with Aetna to design a program called "Opportunity Plus" that was specifically tailored to be endorsed by NYSUT and offered to NYSUT members. One component of this arrangement was that Aetna (and later ING) would pay NYSUT Trust for NYSUT's endorsement. Thus, rather than acting in the NYSUT members' best interests, the NYSUT Defendants acquiesced in Aetna's selection of investments for the annuities in the "Opportunity Plus" program that charged unreasonably high fees and carried unreasonably high risk, despite the availability of comparable investments of lower risk and lower cost.

17.     The NYSUT Defendants first offered and endorsed Opportunity Plus to NYSUT members in June 1989. In return, Aetna agreed to pay a fee to NYSUT Trust that was originally about $40,000 per year.

8

18.     By 1994, over 26,000 NYSUT members had enrolled in Opportunity Plus and had invested about $735,000,000.

19.     The NYSUT Defendants worked with Aetna's successor, ING, in 2000, to offer a second program, called "Opportunity Independence," to NYSUT members for which NYSUT Trust was also paid for NYSUT's endorsement.

20.     On information and belief, to date more than 50,000 current and retired NYSUT members have participated in the NYSUT endorsed Opportunity Programs, investing approximately $2,500,000,000 therein.

21.     The NYSUT Defendants failed to engage in a prudent selection process with respect to either ING or the investments offered in the Opportunity Programs. Rather, the NYSUT Defendants selected and exclusively endorsed the Opportunity Programs because, by doing so, NYSUT Trust would receive substantial endorsement fees. These payments started at approximately $40,000 in 1989, grew to $400,000 in 1994, and rose to over $1,800,000 in 2001. On information and belief, ING made endorsement fee payments directly to NYSUT Trust that were anticipated to amount to over $3,000,000 each in 2005 and 2006 and $4,200,000 in 2009.

**B.     The Opportunity Programs Are Not in the Best Interests of Plaintiffs, the Class, or the Subclass.**

22.     Under the Opportunity Programs, ING selected the different mutual funds and other investments funds or portfolios that were included in the menu of investment options for the group annuity contracts offered to NYSUT members.

23.     ING directs NYSUT members' investments in mutual funds and other investment funds or portfolios into ING's Variable Annuity Account C (also known as the "Separate

9

Account"[3]). Many members of the Class, including Plaintiffs, hold group annuity contracts that provide for investing in ING's Separate Account. The Separate Account keeps its assets separate from the general assets of ING and is not chargeable with any of ING's liabilities outside of the Separate Account.

24.     The Separate Account is divided into sub-accounts that correspond to the mutual funds and other investment funds or portfolios made available under the group annuity contracts. Each sub-account invests directly in shares of a pre-assigned fund. Pursuant to the group annuity contracts, NYSUT members choose from mutual funds and other investments funds or portfolios included in the menu of investment options offered to them, and in which their contributions are invested. ING allocates those contributions to particular sub-accounts within the Separate Account which correspond to the chosen mutual fund or other investment fund or portfolio option. Actual title to the assets in the Separate Account is held by ING. In return for their contributions, NYSUT members receive accumulation units (shares) of the Separate Account, which are held by ING as "Accumulation Units." In this respect, the Separate Account is like a mutual fund. When people invest in a mutual fund, they own shares of the mutual fund; they do not have a direct ownership interest in the underlying stocks owned by the mutual fund.

25.     Based on the combined contributions to the sub-accounts made by NYSUT members, ING sold and purchased mutual funds and other investment funds or portfolio shares to hold in the Separate Account. The value of a participant's Accumulation Units in the Separate Account fluctuates based upon the value of these shares held within the various sub-accounts.

---

[3] ING established the Separate Account in 1976 as a continuation of the separate account of Aetna Variable Annuity Life Insurance Company established in 1974 under Arkansas law. The Separate Account was established as a segregated asset account to fund variable annuity contracts.

26.     Mutual funds generally do not have employees and must contract with various entities to perform managerial, administrative, accounting, legal, and other services. Mutual funds pay the entities providing those services. Mutual funds pass those costs on to their investors by charging them a variety of fees, typically investment management fees, distribution fees or commissions, and marketing or 12(b)(1) fees. A mutual fund passes these fees on to investors by paying to the investment manager, mutual fund advisor, or other service provider out of its general assets, which causes the total value of the mutual fund to decrease by that amount. Here, this causes the value of the shares in the mutual fund held by ING in the Separate Account to decrease pro rata, which in turn reduces the value of the Class members' investments.

27.     ING also requires Investment Entities to pay ING, ostensibly for services ING performs for the Investment Entities, as a condition to including the Investment Entities' mutual funds and/or other investment funds or portfolios in the menu of investment options offered to NYSUT members. The fees that ING requires Investment Entities to pay are based upon a percentage of the Class members' assets invested in their mutual funds and/or other investment funds or portfolios through ING.

28.     This relationship between ING and the Investment Entities provides extra income to ING, but Plaintiffs and the Class receive no benefit. Indeed, the payment of this fee is contrary to the interests of Plaintiffs and the Class, because only Investment Entities willing to pay this fee will be included on the menu of investment options provided to NYSUT members. The payment of this fee by the Investment Entities to ING is also not in the best interests of Plaintiffs and the Class because the Investment Entities deduct the fees paid to ING from the funds themselves, further reducing the value of Plaintiffs' and Class members' accounts.

11

29.     ING's relationship with the Investment Entities is not in the best interests of Plaintiffs and the Class.  Although the payments are calculated as a percentage of the NYSUT member's ING investments, they bear no relationship to the cost of providing the services or a reasonable fair market value for the services.  Simply put, whether a Class member has $10,000 or $100,000 in his or her account, the cost to handle transactions and maintain records is the same.  Furthermore, the provision of these services is an inherent part of ING's business, such that the services provided by ING actually have no reasonable fair market value.  Indeed, upon information and belief, prior to its requirement that Investment Entities pay ING to have their mutual funds and/or other investment funds or portfolios included in the menu of investment options offered to NYSUT members, ING provided the same services to the Investment Entities free of charge.

30.     Any services ING provides based on these payments are nominal, and the substantial payments are not consideration for those services.  The Investment Entities are not paying ING for the performance of services; rather they are paying ING to include their mutual funds and/or other investment funds or portfolios in the menu of investment options offered to NYSUT members.  Thus, ING both misuses and mismanages the assets of the NYSUT members by selecting investment options based upon payments it will receive as a result, *rather than* based on a prudent evaluation of the merits of the options.  Based on these criteria, ING chooses expensive funds that can afford to make payments to ING rather than comparable or better-performing, lower-cost options.

C.   The Opportunity Programs' Fixed Account Is Not in the Best Interests of Plaintiffs or the Subclass.

31.   Through the Opportunity Programs, ING also offers the ING Fixed Account. The ING Fixed Account is available through an annuity contract issued by ING, which guarantees a minimum rate of interest, but which may credit interest that exceeds the minimum guarantee. The Fixed Account is an obligation of ING's General Account which supports all of the company's insurance and annuity commitments. The interest rate guarantees under the contract are subject to ING's claims-paying ability.

32.   Unlike contributions that Plaintiffs and the Subclass direct into mutual fund or other investment funds or portfolio options, contributions to the ING Fixed Account are not held in the Separate Account. Instead, contributions to the ING Fixed Account are invested in ING's General Account, which supports all of the company's insurance and annuity commitments. Accordingly, these assets are subject to ING's creditors in the event of ING's default or bankruptcy. Likewise, the safety and interest rate guarantees of the ING Fixed Account are dependent upon ING's claims-paying ability.

33.   The assets of the Subclass members are thus exposed to a tremendous, uncompensated and very real risk. For example, in October 2008, there were concerns that ING might collapse when its shares fell more than 27 percent after ING announced it expected to post a third-quarter loss of 500 million Euros as a result of 1.6 billion Euros in write-downs. The Dutch government intervened in order to save ING from collapse, and injected roughly 10 billion Euros into ING in an effort to stabilize its operations. Had ING collapsed, the assets of the members of the Subclass in the ING Fixed Account would have been fully exposed to ING's creditors in its default or bankruptcy.

13

34.     It is well known in the annuity industry, which includes ING, that in the typical § 403(b) program, participants direct a substantial portion of their contributions to fixed income funds such as the ING Fixed Account. Indeed, on information and belief, approximately 50% of the assets invested in the Opportunity Programs were directed to the ING Fixed Account.

35.     There is no shortage of diversified fixed income funds that have low fees, competitive returns, and much lower levels of risk than the ING Fixed Account, which is subject to ING's single issuer credit risk. Indeed, since the 1992 Executive Life Fixed Account crisis, prudent plan sponsors and fiduciaries have migrated away from undiversified General Account products and the risks inherent in them.

36.     Instead of offering one or more competitive diversified fixed income funds, the NYSUT Defendants allowed ING to offer the ING Fixed Account as its single, undiversified proprietary fixed income fund. This fund carries high integrated fees, single issuer credit risk, and an arbitrary rate of return below the rate of return ING enjoys on the ING Fixed Account assets invested in ING's General Account. The ING Fixed Account also does not provide a risk premium to participants on par with investments of similar risk, such as a 30-year ING bond. Rather, ING uses the ING Fixed Account as an inexpensive source for borrowing money, so that it can avoid having to pay substantially more in the marketplace.

37.     The ING Fixed Account subjects participants to certain transfer and surrender charges as well as possible deferred sales charges on their ING Fixed Account investments. These charges and other integrated fees substantially impact participants' rates of return, on information and belief, by decreasing them up to twenty percent.

14

38.     In effect, month after month, and year after year, ING profits from the ING Fixed Account by reaping excessive integrated fees, and pocketing the difference between what it pays out and what it takes in on the ING Fixed Account's assets. If, instead, ING were to offer a competitive fixed income fund option, as opposed to a self-serving one, participants would incur less risk and achieve greater returns.

**D.     The NYSUT Defendants Did Not Adequately Monitor or Investigate ING and its Opportunity Programs, Including the Fixed Account.**

39.     The NYSUT Defendants abused their positions of trust and breached their duties as fiduciaries in failing to adequately monitor or investigate ING, its Opportunity Programs, and its Fixed Account. The NYSUT Defendants breached their fiduciary duties to Plaintiffs, the Class, and the Subclass by maintaining and continuing to offer these investments in their § 403(b) program and by accepting payments for endorsing them. Prudent, loyal fiduciaries would have actively investigated and monitored the Opportunity Programs and the Fixed Account to ensure they were operating in the best interests of NYSUT's members. The NYSUT Defendants failed to undertake these steps.

40.     The NYSUT Defendants failed to ensure that the fees paid with the Opportunity Programs' assets were reasonable. The NYSUT Defendants failed to properly consider investment alternatives that would have resulted in lower fees for a substantially similar investment product. Rather, the NYSUT Defendants allowed ING to select funds for the Opportunity Programs that were far more expensive than readily available comparable alternatives in the marketplace, and in addition, allowed ING to charge excessive fees to NYSUT members for services that provided nominal, if any, benefit.

15

41.    For example, since its inception in 1989, Plaintiffs and the Class have been
assessed every year a so-called Mortality and Expense ("M&E") fee. Generally, an M&E fee
compensates the insurance company for insurance risks it assumes under the annuity contract
and includes a profit component. Profit from an M&E fee may be used by an insurance company
to pay for marketing, including commissions to licensed broker-dealers and endorsement fees to
unlicensed entities such as NYSUT Trust related to selling the variable annuity to investors.
While the M&E fees for the Opportunity Programs range from 1 to 1.25%, or 125 basis points, a
low-cost Vanguard Variable Annuity has an M&E fee of merely .195%, or 19.5 basis points.

42.    Between September 1, 2004, and August 31, 2005, Plaintiffs and the members of
the Class paid ING over $12,000,000 in M&E fees. If they had invested in Vanguard Funds, for
example, the fees would have been substantially less. At the same time, ING paid NYSUT Trust
about $2,660,000 in endorsement fees. In other words, the high M&E fee Opportunity Programs
participants pay to ING underwrites the endorsement fees ING pays to NYSUT Trust and leaves
ING a substantial profit. Moreover, Opportunity Programs participants paid another
approximately $12,000,000 in mutual fund costs, for a total of about $24,000,000 in fees in this
12 month period alone.

43.    In 1989, the annual M&E fee was 1.25% of each retirement account's mutual
fund balance, and the average mutual fund cost was 0.54% (although costs varied by fund),
providing for average combined annual charges of 1.79%. The combined charges for mutual
fund investments grew to 2.04% in 1994 (an amount that could be as high as 2.85% for a Class
member investing in the most expensive mutual fund) and declined slightly thereafter, reaching
1.86% in 2004. The M&E component of the combined costs was reduced to 1.1% in 2000,

16

1.05% in 2001, and finally to 1.00% in 2002. As of 2007, NYSUT members' Separate Account balance and the average cost of each investment in the Separate Account balance was 0.68%. Thus, the average combined annual charge was 1.68%. A typical combined mutual fund and M&E fee is significantly lower, and Class members received no benefit in exchange for paying these excessive fees.

44.      The percentage of fees charged to Class members is even higher when other fees and expenses are taken into account. Other fees ING charges the Class include the Administrative Expense Charge, an annual charge of up to .25% on each anniversary of an individual's account, and a "Surrender Charge" of up to 5% if a participant withdraws his or her investments from ING within a specified number of years after contract inception. Individually and collectively, these fees are unreasonably high and inappropriate for a tax-exempt retirement plan. An adequate investigation by the NYSUT Defendants would have revealed these facts.

45.      The Opportunity Independence program, which the NYSUT Defendants began offering to Plaintiffs and the Class in 2000, offered direct access to mutual funds and other investment funds and portfolios without charging an M&E fee. However, Opportunity Independence program investors are still charged a 0.40% "Administration Fee" in addition to the applicable fund expenses under the Opportunity Independence program. A typical administration fee is in the range of 0.15% per year.

46.      Some of the mutual funds available through the Opportunity Independence program beginning in 2000 were even more expensive than those offered in the Opportunity Plus program. For instance, the Opportunity Independence program offered a S&P 500 index fund with an expense ratio of 0.93%, even though other S&P 500 index funds were available at

17

substantially lower costs. The NYSUT Defendants failed to ensure that the fees paid from the

Opportunity Programs' assets were reasonable. Instead, the NYSUT Defendants allowed ING to

charge excessive rates for the services ING ostensibly provided. The NYSUT Defendants also

allowed ING to choose unduly expensive mutual funds and investment funds and portfolios for

the Opportunity Programs based on payments it received from the Investment Entities.

47.     NYSUT members received no benefit in exchange for paying these excessive

fees.

48.     While fees may appear to be very small on an individual basis, they cause a

dramatic decrease in an investor's returns over time. The cumulative impact of excessive

retirement plan fees is well known in the industry. In the November 2006 report by the

Government Accountability Office ("GAO") regarding 401(k) plan fees, *Private Pensions*

*Changes Needed to Provide 401(k) Plan Participants and the Department of Labor Better*

*Information on Fees* (the "*GAO Fees Report*"), the GAO described the impact that excessive fees

have on retirement savings:

> Over the course of the employee's career, fees may significantly decrease
> retirement savings. For example, a 1-percentage point difference in fees can
> significantly reduce the amount of money saved for retirement. Assume an
> employee of 45 years of age with 20 years until retirement changes employers and
> leaves $20,000 in a 401(k) account until retirement. If the average annual net is
> 6.5 percent—a 7 percent investment return minus a 0.5 percent charge for fees—
> the $20,000 will grow to about $70,500 at retirement. However, if fees are
> instead 1.5 percent annually, the average net return is reduced to 5.5 percent, and
> the $20,000 will grow to only about $58,400. The additional 1 percent annual
> charge for fees would reduce the account balance at retirement by about 17
> percent.

*GAO Fees Report* at 7, available at http://www.gao.gov/new.items/d0721.pdf (visited on

December 1, 2009).

18

49.     As a result of the NYSUT Defendants' failures to prudently and loyally manage Plaintiffs' and the Class members' assets and to ensure that fees paid from the their accounts were reasonable in relation to lower cost investment alternatives, Plaintiffs' and the Class members' retirement savings have been substantially diminished.

50.     The NYSUT Defendants undertook no reasonably prudent process to ensure that Plaintiffs and the Class were only charged reasonable fees.

51.     By failing to ensure that fees paid from Plaintiffs' and the Class members' assets were reasonable, the NYSUT Defendants breached their fiduciary duties.

52.     An adequate investigation by an impartial fiduciary would have revealed that the fees charged to Plaintiffs and the Class were unreasonable and that the investment options selected and maintained by the NYSUT Defendants were not in the best interests of Plaintiffs and the Class.

53.     The NYSUT Defendants also failed to ensure that the risk assumed by members of the Subclass in connection with the Fixed Account was reasonable and prudent in relationship to other investment offerings that carried lower risk and similar or better rates of return. Accordingly, the NYSUT Defendants breached their fiduciary obligations to the Subclass by failing to adequately monitor and investigate ING with respect to its Fixed Account.

## V.     CLASS ACTION ALLEGATIONS

54.     **Class Definitions.**  Plaintiffs bring this action as a class action pursuant to § 901 of the New York Civil Practice Law and Rules ("CPLR"), and on behalf of the following class, of persons similarly situated (the "Class"):

> Current and former NYSUT members, and/or their beneficiaries, who participated in the Opportunity Plus and/or Opportunity Independence Section 403(b)

19

programs at any time after June 1989 (the "Class Period"), but excluding the NYSUT Defendants and their beneficiaries.

In addition, Plaintiffs bring this action on behalf of the following Subclass (the "Subclass"):

> Current and former NYSUT members, and/or their beneficiaries who invested in the Aetna Fixed Account (subsequently named the ING Fixed Account) within the Opportunity Plus and/or Opportunity Independence Section 403(b) programs at any time after June 1989 (the "Subclass Period"), but excluding the NYSUT Defendants and their beneficiaries.

55.     **Numerosity.**  Pursuant to CPLR § 901(a)(1), the members of the Class and Subclass are so numerous that joinder of all members is impracticable.  While the exact number of Class and Subclass members is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe there are more than 50,000 members of the Class who participated in the Opportunity Programs during the Class Period.  On information and belief, a substantial percentage of the proposed Class is also a member of the proposed Subclass.

56.     **Commonality.**  Pursuant to CPLR § 901(a)(2), common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting solely individual members of the Class and Subclass.  Among the questions of law and fact common to the Class and Subclass are:

(a)     whether the NYSUT Defendants owe fiduciary duties to the members of the Class and Subclass;

(b)     whether the NYSUT Defendants breached their fiduciary duties by failing to act prudently and solely in the interests of the members of the Class and Subclass and their beneficiaries;

(c)     whether ING aided and abetted the NYSUT Defendants' fiduciary breaches;

20

(d)     whether ING has been unjustly enriched by its actions alleged herein; and

(e)     whether the members of the Class and Subclass have suffered losses,
continue to suffer losses, and, if so, the proper nature and measure of a
remedy.

57.     **Typicality.** Pursuant to CPLR § 901(a)(3), Plaintiffs' claims are typical of the

claims of the members of the Class and Subclass because:  (a) the conduct of Defendants giving

rise to the claims is identical as to all members of the Class and Subclass; and (b) the damages

suffered by each member of the Class and Subclass arise out of the same set of operative facts.

58.     **Adequacy.** Pursuant to CPLR § 901(a)(4), Plaintiffs will fairly and adequately

protect the interests of the members of the Class and Subclass and have retained counsel

competent and experienced in complex, class action litigation.  Plaintiffs have no interests

antagonistic to or in conflict with those of the Class and Subclass.

59.     **Superiority.** Pursuant to CPLR § 901(a)(5), a class action is superior to other

available methods for the fair and efficient adjudication of this controversy.

## VI.   CAUSES OF ACTION

### Cause of Action I – Breach of Fiduciary Duty by the NYSUT Defendants

60.     Plaintiffs incorporate herein the allegations set forth above.

61.     At all times alleged herein, the NYSUT Defendants owed Plaintiffs, the Class,

and the Subclass fiduciary duties in the management and administration of their assets.

62.     The NYSUT Defendants have breached their fiduciary duties to Plaintiffs and the

Class by: (i) accepting fees paid by ING to the NYSUT Trust for endorsing the Opportunity

Programs; (ii) failing to establish a prudent selection process for NYSUT members' investment

options; and (iii) failing to adequately investigate and monitor the Opportunity Programs,

21

including the Fixed Account, once selected, to ensure that they were and remained in the best interests of NYSUT members.

63.     In particular, the NYSUT Defendants have failed to adequately investigate and monitor the excessive fees ING charges NYSUT members through the Opportunity Programs, the payments ING receives from Investment Entities for including their investments in the menu of options offered to NYSUT members, and the high integrated fees and unreasonable, uncompensated risk to Subclass members inherent in the ING Fixed Account.

64.     As a direct and proximate result of these breaches of fiduciary duties by the NYSUT Defendants, Plaintiffs, the Class, and the Subclass have suffered damages in the hundreds of millions of dollars.

65.     Plaintiffs, the Class, and the Subclass are entitled to: (i) declaratory relief and preliminary and permanent injunctive relief requiring the NYSUT Defendants to properly carry out their fiduciary duties as alleged herein; (ii) the imposition of a constructive trust to recover for the benefit of Plaintiffs, the Subclass, and the Class the endorsement fees ING paid to NYSUT Trust; and (iii) monetary relief, including punitive damages to the extent authorized by law, in an amount to be proven at trial based on Plaintiffs' losses alleged herein.

**Cause of Action II – Aiding and Abetting a Breach of Fiduciary Duty by ING**

66.     Plaintiffs incorporate herein the allegations set forth above.

67.     At all times alleged herein, through its contractual relationships and extensive communications with the NYSUT Defendants, ING knew or reasonably should have known that the NYSUT Defendants were fiduciaries to Plaintiffs, the Class, and the Subclass, and that the

22

NYSUT Defendants had fiduciary duties to act in the best interests of Plaintiffs, the Class, and the Subclass.

68.     ING nonetheless willfully and knowingly encouraged and participated in the NYSUT Defendants' breaches of fiduciary duty, as set forth above.

69.     In particular, ING aided and abetted the NYSUT Defendants' fiduciary breaches in the following ways: (i) ING aided and abetted the NYSUT Defendants' failure to establish a prudent selection process for its members' investment options by offering to pay and in fact paying endorsement fees to NYSUT Trust for endorsing the Opportunity Programs; and (ii) based on its own self-interest in perpetuating its role in offering the Opportunity Programs, ING aided and abetted the NYSUT Defendants' failure to adequately investigate and monitor the Opportunity Programs, including the Fixed Account, to ensure they are and remain in the best interest of the Class and the Subclass.

70.     As a direct and proximate result of ING's aiding and abetting the NYSUT Defendants' breaches of fiduciary duty, Plaintiffs, the Class, and the Subclass suffered damages in the hundreds of millions of dollars.

71.     Plaintiffs, the Class, and the Subclass are entitled to declaratory relief and preliminary and permanent injunctive relief requiring ING to cease aiding and abetting the NYSUT Defendants' breaches of fiduciary duty, and awarding monetary relief, including punitive damages to the extent authorized by law, in an amount to be proven at trial.

**Cause of Action III – ING's Unjust Enrichment**

72.     Plaintiffs incorporate herein the allegations set forth above.

23

73.     Plaintiffs, on behalf of themselves, the Class, and the Subclass, assert a claim for unjust enrichment against ING under the common law of New York.

74.     By means of the wrongful conduct at all times alleged herein, ING has received and wrongfully retained funds from Plaintiffs, the Class, and the Subclass in the form of excessive fees. In so doing, the Defendants acted with conscious disregard for the rights of Plaintiffs and the members of the Class and Subclass.

75.     As a result of ING's wrongful conduct as alleged herein, ING has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class and Subclass.

76.     ING's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

77.     Under the common law doctrine of unjust enrichment, it is inequitable for ING to be permitted to retain the benefits it received, and is still receiving, unfairly and without justification, from the imposition of excessive fees on Plaintiffs and members of the Class and Subclass, including ING's receipt of fees from the Investment Entities which were then passed through to Plaintiffs and members of the Class and Subclass. ING's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

78.     The financial benefits derived by ING rightfully belong to Plaintiffs and the Class members. ING should be compelled to disgorge to a common fund and for the benefit of Plaintiffs and the Class members all excessive or inequitable fees received by ING as alleged herein (the "Ill-gotten Gains").

24

79.   Plaintiffs, the Class, and the Subclass are entitled to declaratory relief and preliminary and permanent injunctive relief requiring ING to disgorge its Ill-gotten Gains as alleged herein, and imposing a constructive trust on said Ill-gotten Gains for the benefit of Plaintiffs, the Class, and the Subclass members.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for a judgment:

A.   Declaring that the NYSUT Defendants have breached their fiduciary duties owed to Plaintiffs, the Class, and the Subclass;

B.   Declaring that ING aided and abetted the NYSUT Defendants' breaches of fiduciary duty, as set forth above;

C.   Enjoining ING from including a fixed income investment option, including, but not limited to, the "Fixed Account," on the menu of investment options offered to NYSUT members unless such fund offers a diversified and competitive risk-adjusted rate;

D.   Enjoining ING from requiring Investment Entities to pay ING as a condition to include their mutual funds and/or other investment funds or portfolios on the menu of investment options offered to NYSUT members;

E.   Declaring that ING has been unjustly enriched by its actions alleged herein;

F.   Enjoining the NYSUT Defendants from breaching their fiduciary duties owed to Plaintiffs, the Class, and the Subclass in the future and awarding monetary relief against the NYSUT Defendants and ING, jointly and severally, in the full amount of all losses suffered by Plaintiffs, the Class, and the Subclass as the result of the breaches of fiduciary duties by the NYSUT Defendants and ING's aiding and abetting of the NYSUT Defendants' breaches of

fiduciary duty, together with pre-judgment and post-judgment compounded interest at the maximum possible rates, whether at law or in equity and punitive damages;

G.       Imposing a constructive trust for the benefit of Plaintiffs and the Class and ordering NYSUT Trust to disgorge to Plaintiffs and the Class all payments it received from ING for its endorsement of the Opportunity Programs, together with pre-judgment and post-judgment compounded interest at the maximum possible rates, whether at law or in equity;

H.       Imposing a constructive trust for the benefit of Plaintiffs and the Class and ordering ING to disgorge to Plaintiffs and the Class all payments it received from Investment Entities for including their mutual funds and/or other investment funds or portfolios on the menu of investments options offered to NYSUT members, together with pre-judgment and post-judgment compounded interest at the maximum possible rates, whether at law or in equity;

I.       Imposing a constructive trust for the benefits of Plaintiffs, the Class, and the Subclass, and ordering ING to disgorge to Plaintiffs and the Class all excessive fees charged to Plaintiffs, as alleged herein;

J.       Awarding attorneys' fees and expenses pursuant to the common fund doctrine and other applicable law; and

26

K.    Granting all such other and further relief, general or special, legal or equitable, including punitive damages, to which Plaintiffs, the Class, and the Subclass may be justly entitled.

Dated this 25th day of February, 2010.

Respectfully submitted:

KELLER ROHRBACK L.L.P.

By:    /s/David S. Preminger
       David S. Preminger
       770 Broadway, Second Floor
       New York, NY 10003
       Tel:  (646) 495-6198
       Fax:  (646) 495-6197
       Emai:  dpreminger@kellerrohrback.com

       Lynn Lincoln Sarko
       Derek W. Loeser
       Tana Lin
       Amy Williams-Derry
       Karin B. Swope
       KELLER ROHRBACK L.L.P.
       1201 Third Avenue, Suite 3200
       Seattle, WA 98101
       Tel:  (206) 623-1900
       Fax:  (206) 623-3384
       Email:  lsarko@kellerrohrback.com;
       dloeser@kellerrohrback.com;
       tlin@kellerrohrback.com;
       awilliams-derry@kellerrohrback.com;
       kswope@kellerrohrback.com

27

Jeffrey C. Engerman
Law Offices of Jeffrey C. Engerman, PC
11901 Santa Monica Boulevard, Suite 700
Los Angeles, CA  90025
Tel:  (310) 207-7777
Fax: (310) 207-7779
Email:  JEngerman@EngermanLaw.com

Allen C. Engerman
Law Offices of Allen C. Engerman, P.A.
Sanctuary Centre
4800 North Federal Highway, Suite 100-D
Boca Raton, FL  33431
Tel:  (561) 392-2222
Fax: (561) 392-2123
Email:  ACELaw@mcn.org

Edward Ted Siedle
79 Island Drive South
Ocean Ridge, Florida  33435
Tel:  (561) 202-0919
Fax: (561) 202-0191
Email:  ESiedle@aol.com

Denis J. Jean
1018 Jerome Road
Franklin Square
New York, NY  22020
Tel:  (516) 837-3892
Fax: (516) 943-2737
Email:  RLLDJJ@Hofstra.edu

*Attorneys for Plaintiffs*

28

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NASSAU**
-----------------------------------------------------------------------------x

BETSABÉ MONTOYA and BLANCHE PESCE,                           Index No. 600156/2010
individually and on behalf of all others similarly situated,

                          Plaintiffs,

                                    v.

NEW YORK STATE UNITED TEACHERS; NEW YORK
STATE UNITED TEACHERS MEMBER BENEFITS TRUST,
a New York not-for-profit trust; ING LIFE INSURANCE AND
ANNUITY COMPANY, a Connecticut corporation, LEE
CUTLER, Trustee of New York State United Teachers Member
Benefits Trust; KATHLEEN M. DONAHUE, Trustee of New
York State United Teachers Member Benefits Trust; RICHARD
C. IANNUZZI, Trustee of New York State United Teachers
Member Benefits Trust; ROBERT W. LESNIEWSKI, Trustee of
New York State United Teachers Member Benefits Trust; ALAN
B. LUBIN, Trustee of New York State United Teachers Member
Benefits Trust; WILLIAM J. MCAULIFFE, Trustee of York
State United Teachers Member Benefits Trust; JOSEPH P.
MCLAUGHLIN, Trustee of New York State United Teachers
Member Benefits Trust; ARTHUR PEPPER, Trustee of New
York State United Teachers Member Benefits Trust; ELLEN
SCHULER MAUK, Trustee of New York State United Teachers
Member Benefits Trust; BARBARA SHAPIRO, Trustee of New
York State United Teachers Member Benefits Trust;
RODERICK P. SHERMAN, Trustee of New York State United
Teachers Member Benefits Trust; GARY TERWILLIGER,
Trustee of New York State United Teachers Member Benefits
Trust; IVAN TIGER, Trustee of New York State United
Teachers Member Benefits Trust; JOHN DOE DEFENDANTS
1-99 and JANE DOE DEFENDANTS 1-99, Trustees of New
York State United Teachers Member Benefits Trust,

                          Defendants.
-----------------------------------------------------------------------------x

STATEMENT OF SERVICE BY MAIL AND ACKNOWLEDGEMENT OF RECEIPT BY MAIL OF
SUMMONS AND COMPLAINT OR SUMMONS AND NOTICE OR NOTICE OF PETITION AND
PETITION

1

## A. STATEMENT OF SERVICE BY MAIL

To:   ING Life Insurance and Annuity Company,

c/o Landon K. Clayman, Jorden Burt LLP, 777 Brickell Avenue, Suite 500, Miami, FL

33131-2803.

The enclosed summons and complaint are served pursuant to section 312-a of the Civil

Practice Law and Rules.

To avoid being charged with the expense of service upon you, you must sign, date and

complete the acknowledgement part of this form and mail or deliver one copy of the completed

form to the sender within thirty (30) days from the date you receive it. You should keep a copy

for your records or your attorney. If you wish to consult an attorney, you should do so as soon as

possible before the thirty (30) days expire.

If you do not complete and return the form to the sender within thirty (30) days, you (or

the party on whose behalf you are being served) will be required to pay expenses incurred in

serving the summons and complaint, or summons and notice, or notice of petition and petition in

any other manner permitted by law, and the cost of such service as permitted by law will be

entered as a judgment against you.

If you have received a complaint or petition with this statement, the return of this

statement and acknowledgement does not relieve you of the necessity to answer the complaint or

petition. The time to answer expires twenty (20) days after the day you mail or deliver this form

to the sender. If you wish to consult with an attorney, you should do so as soon as possible

before the twenty (20) days expire.

2

If you are served on behalf of a corporation, unincorporated association, partnership or other entity, you must indicate under your signature your relationship to the entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

It is a crime to forge a signature or to make a false entry on this statement or on the acknowledgement.

B. ACKNOWLEDGEMENT OF RECEIPT OF SUMMONS AND COMPLAINT OR SUMMONS AND NOTICE OR NOTICE OF PETITION AND PETITION

I received a summons and complaint, in the above-captioned matter at

777 Brickell Avenue, Suite 500, Miami, FL  33131 _____ (insert address).

PLEASE CHECK ONE OF THE FOLLOWING;

IF 2 IS CHECKED, COMPLETE AS INDICATED:

1. /X / I am not in military service.

2. / / I am in military service, and my rank, serial number and branch of service are as follows:

Rank: _____

Serial number: _____

Branch of Service: _____

TO BE COMPLETED REGARDLESS OF MILITARY STATUS:

Date: __April 16, 2010_____
(Date this Acknowledgement is executed)

I affirm the above as true under penalty of perjury.

3

Signature

 Markham R. Leventhal
Print name

 ING Life Insurance & Annuity Company
Name of Defendant for which acting

 Attorney
Position with Defendant for which acting (i.e., officer, attorney, etc.)

## PLEASE COMPLETE ALL BLANKS INCLUDING DATES

(e) Subsequent service. Where a duly executed acknowledgement is not returned, upon the subsequent service of process in another manner permitted by law, the summons or notice of petition or paper served with the summons or notice of petition shall indicate that an attempt previously was made to effect service pursuant to this section.

(f) Disbursements.  Where the signed acknowledgement of receipt is not returned within thirty (30) days after receipt of the documents mailed pursuant to subdivision (a) of this section, the reasonable expense of serving process by an alternative method shall be taxed by the court on notice pursuant to section 8402 of this chapter as a disbursement to the party serving process, and the court shall direct immediate judgment in that amount.

4



Julia E. Zuckerman
Attorney
(202) 861-6605
jzuckerman@groom.com

April 16, 2010

**By Electronic and U.S. Mail**

Amy Williams-Derry
Keller Rohrback, L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington  98101-3052

> Re:    *Montoya , et al. v. New York State United Teachers, et al.,*
> **Index No. 600156/2010**

Dear Amy:

Enclosed please find the Statement of Service by Mail and Acknowledgment of Receipt by Mail of Summons and Complaint on behalf of NYSUT, NYSUT Trust, and individually named NYSUT defendants.

Sincerely,

*Julia Zuckerman*

Julia E. Zuckerman

Enclosure

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NASSAU**
------------------------------------------------------------------------x

BETSABÉ MONTOYA and BLANCHE PESCE,          Index No. 600156/2010
individually and on behalf of all others similarly situated,

          Plaintiffs,

                  v.

NEW YORK STATE UNITED TEACHERS; NEW YORK
STATE UNITED TEACHERS MEMBER BENEFITS TRUST,
a New York not-for-profit trust; ING LIFE INSURANCE AND
ANNUITY COMPANY, a Connecticut corporation, LEE
CUTLER, Trustee of New York State United Teachers Member
Benefits Trust; KATHLEEN M. DONAHUE, Trustee of New
York State United Teachers Member Benefits Trust; RICHARD
C. IANNUZZI, Trustee of New York State United Teachers
Member Benefits Trust; ROBERT W. LESNIEWSKI, Trustee of
New York State United Teachers Member Benefits Trust; ALAN
B. LUBIN, Trustee of New York State United Teachers Member
Benefits Trust; WILLIAM J. MCAULIFFE, Trustee of New
York State United Teachers Member Benefits Trust; JOSEPH P.
MCLAUGHLIN, Trustee of New York State United Teachers
Member Benefits Trust; ARTHUR PEPPER, Trustee of New
York State United Teachers Member Benefits Trust; ELLEN
SCHULER MAUK, Trustee of New York State United Teachers
Member Benefits Trust; BARBARA SHAPIRO, Trustee of New
York State United Teachers Member Benefits Trust;
RODERICK P. SHERMAN, Trustee of New York State United
Teachers Member Benefits Trust; GARY TERWILLIGER,
Trustee of New York State United Teachers Member Benefits
Trust; IVAN TIGER, Trustee of New York State United
Teachers Member Benefits Trust; JOHN DOE DEFENDANTS
1–99 and JANE DOE DEFENDANTS 1–99, Trustees of New
York State United Teachers Member Benefits Trust,

          Defendants.
------------------------------------------------------------------------x

**STATEMENT OF SERVICE BY MAIL AND ACKNOWLEDGEMENT OF RECEIPT BY MAIL OF
SUMMONS AND COMPLAINT OR SUMMONS AND NOTICE OR NOTICE OF PETITION AND
PETITION**

1

## A. STATEMENT OF SERVICE BY MAIL

To:   New York State United Teachers, New York State United Teachers Member Benefits

Trust, Lee Cutler, Kathleen M. Donahue, Richard C. Iannuzzi, Robert W. Lesniewski,

Alan B. Lubin, William J. McAuliffe, Joseph P. McLaughlin, Arthur Pepper, Ellen

Schuler Mauk, Barbara Shapiro, Roderick P. Sherman, Gary Terwilliger, and Ivan Tiger,

as the named Trustees of New York State United Teachers Member Benefits Trust

c/o Lars C. Golumbic, Groom Law Group, Chartered, 1701 Pennsylvania Avenue N.W.,

Suite 1200, Washington, DC 20006-5893.

The enclosed summons and complaint are served pursuant to section 312-a of the Civil

Practice Law and Rules.

To avoid being charged with the expense of service upon you, you must sign, date and

complete the acknowledgement part of this form and mail or deliver one copy of the completed

form to the sender within thirty (30) days from the date you receive it.  You should keep a copy

for your records or your attorney. If you wish to consult an attorney, you should do so as soon as

possible before the thirty (30) days expire.

If you do not complete and return the form to the sender within thirty (30) days, you (or

the party on whose behalf you are being served) will be required to pay  expenses incurred in

serving the summons and complaint, or summons and notice, or notice of petition and petition in

any other manner permitted by law, and the cost of such service as permitted by law will be

entered as a judgment against you.

If you have received a complaint or petition with this statement, the return of this

statement and acknowledgement does not relieve you of the necessity to answer the complaint or

2

petition. The time to answer expires twenty (20) days after the day you mail or deliver this form

to the sender. If you wish to consult with an attorney, you should do so as soon as possible

before the twenty (20) days expire.

If you are served on behalf of a corporation, unincorporated association, partnership or

other entity, you must indicate under your signature your relationship to the entity. If you are

served on behalf of another person and you are authorized to receive process, you must indicate

under your signature your authority.

It is a crime to forge a signature or to make a false entry on this statement or on the

acknowledgement.

### B. ACKNOWLEDGEMENT OF RECEIPT OF SUMMONS AND COMPLAINT OR SUMMONS AND NOTICE OR NOTICE OF PETITION AND PETITION

I received a summons and complaint, in the above-captioned matter at
Groom Law Group, Chartered
1701 Pennsylvania Avenue, NW, Washington, DC 20006 (insert address).

PLEASE CHECK ONE OF THE FOLLOWING;

IF 2 IS CHECKED, COMPLETE AS INDICATED:

1. / / I am not in military service.

2. / / I am in military service, and my rank, serial number and branch of service are as

follows:

Rank:_____

Serial number:_____

Branch of Service:_____

TO BE COMPLETED REGARDLESS OF MILITARY STATUS:

3

Date: 4/13/2010
(Date this Acknowledgement is executed)

I affirm the above as true under penalty of perjury.

Signature

Lars Golumbic

Print name
NYSUT, NYSUT Trust, and individually
named NYSUT defendants

Name of Defendant for which acting

Attorney

Position with Defendant for which acting (i.e., officer, attorney, etc.)

PLEASE COMPLETE ALL BLANKS INCLUDING DATES

(e) Subsequent service. Where a duly executed acknowledgement is not returned, upon the subsequent service of process in another manner permitted by law, the summons or notice of petition or paper served with the summons or notice of petition shall indicate that an attempt previously was made to effect service pursuant to this section.

(f) Disbursements. Where the signed acknowledgement of receipt is not returned within thirty (30) days after receipt of the documents mailed pursuant to subdivision (a) of this section, the reasonable expense of serving process by an alternative method shall be taxed by the court on notice pursuant to section 8402 of this chapter as a disbursement to the party serving process, and the court shall direct immediate judgment in that amount.

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

BETSABE MONTOYA and BLANCHE PESCE, individually
and on behalf of all others similarly situated,

                  Plaintiffs,

v.

NEW YORK STATE UNITED TEACHERS; NEW YORK
STATE UNITED TEACHERS MEMBER BENEFITS TRUST,
a New York not-for-profit trust; ING LIFE INSURANCE AND
ANNUITY COMPANY, a Connecticut corporation, LEE
CUTLER, Trustee of New York State United Teachers Member
Benefits Trust; KATHLEEN M. DONAHUE, Trustee of New
York State United Teachers Member Benefits Trust; RICHARD
C. IANNUZZI, Trustee of New York State United Teachers
Member Benefits Trust; ROBERT W. LESNIEWSKI, Trustee of
New York State United Teachers Member Benefits Trust; ALAN
B. LUBIN, Trustee of New York State United Teachers Member
Benefits Trust; WILLIAM J. MCAULIFFE, Trustee of York
State United Teachers Member Benefits Trust; JOSEPH P.
MCLAUGHLIN, Trustee of New York State United Teachers
Member Benefits Trust; ARTHUR PEPPER, Trustee of New
York State United Teachers Member Benefits Trust; ELLEN
SCHULER MAUK, Trustee of New York State United Teachers
Member Benefits Trust; BARBARA SHAPIRO, Trustee of New
York State United Teachers Member Benefits Trust;
RODERICK P. SHERMAN, Trustee of New York State United
Teachers Member Benefits Trust; GARY TERWILLIGER,
Trustee of New York State United Teachers Member Benefits
Trust; IVAN TIGER, Trustee of New York State United
Teachers Member Benefits Trust; JOHN DOE DEFENDANTS
1-99 and JANE DOE DEFENDANTS 1-99, Trustees of New
York State United Teachers Member Benefits Trust,

                  Defendants.

Case No. _____

## <u>CONSENT TO REMOVAL</u>

Defendants, NEW YORK STATE UNITED TEACHERS; NEW YORK STATE

UNITED TEACHERS MEMBER BENEFITS TRUST, a New York not-for-profit trust; LEE

CUTLER, Trustee of New York State United Teachers Member Benefits Trust; KATHLEEN M.

DONAHUE, Trustee of New York State United Teachers Member Benefits Trust; RICHARD C.

IANNUZZI, Trustee of New York State United Teachers Member Benefits Trust; ROBERT W.

LESNIEWSKI, Trustee of New York State United Teachers Member Benefits Trust; ALAN B.

LUBIN, Trustee of New York State United Teachers Member Benefits Trust; WILLIAM J.

MCAULIFFE, Trustee of York State United Teachers Member Benefits Trust; JOSEPH P.

MCLAUGHLIN, Trustee of New York State United Teachers Member Benefits Trust;

ARTHUR PEPPER, Trustee of New York State United Teachers Member Benefits Trust;

ELLEN SCHULER MAUK, Trustee of New York State United Teachers Member Benefits

Trust; BARBARA SHAPIRO, Trustee of New York State United Teachers Member Benefits

Trust; RODERICK P. SHERMAN, Trustee of New York State United Teachers Member

Benefits Trust; GARY TERWILLIGER, Trustee of New York State United Teachers Member

Benefits Trust; and IVAN TIGER, Trustee of New York State United Teachers Member Benefits

Trust; by and through undersigned counsel, hereby consent to the removal of this action by

Defendant, ING LIFE INSURANCE & ANNUITY CO., from the Supreme Court of the State of

New York, County of Nassau, in which court this action is pending, to the United States District

Court for the Eastern District of New York, being the district within which the action is pending.

May 5, 2010                                        Respectfully submitted,

                                                   _Richard Brook_

                                                   Richard N. Gilberg (RNG 7732)
                                                   Richard A. Brook (RAB 7355)
                                                   MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
                                                   1350 Broadway, Suite 501
                                                   New York, NY 10018
                                                   Telephone: (212) 239-4999

                                                   Edward A. Scallet
                                                   Lars C. Golumbic
                                                   Julia E. Zuckerman
                                                   GROOM LAW GROUP, CHARTERED
                                                   1701 Pennsylvania Avenue N.W., Suite 1200
                                                   Washington, DC 20006-5893
                                                   Telephone: (202) 857-0620

2